```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                    :
CASSANDRA HENDERSON, MD,                            :
                                                    :
                        Plaintiff,                  :
                                                    :
            -v-                                     :     18-CV-3430 (JMF)
                                                    :
PHYSICIAN AFFILIATE GROUP OF NEW YORK               :     OPINION AND ORDER
P.C., et al.,                                       :
                                                    :
                        Defendants.                 :
                                                    :
-----------------------------------------------------------------------X
```

JESSE M. FURMAN, United States District Judge:

Plaintiff Cassandra Henderson, M.D., brings this action against her former employer, the Physician Affiliate Group of New York P.C. ("PAGNY"), as well as the New York City Health and Hospitals Corporation ("HHC"), the Chairman of the Medical Executive Committee ("MEC") of Lincoln Medical and Mental Health Center ("Lincoln Hospital"), and several other individual Defendants. ECF No. 52 ("Fourth Amended Complaint" or "FAC"). Dr. Henderson alleges that she was subjected to discriminatory treatment and eventually fired because of her race, age, and disability. *Id.* ¶ 2. She seeks relief under federal, state, and New York City law, pleading a total of twenty-three causes of action arising under 42 U.S.C. §§ 1981 and 1983, the Age Discrimination in Employment Act ("ADEA"), the Americans with Disabilities Act ("ADA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State and City Human Rights Laws (the "NYSHRL" and "NYCHRL," respectively), and New York common law. *Id.* ¶¶ 4, 175-267. Defendants now move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss some — though not all — of those claims. *See* ECF No. 42 ("Defs.' Mem."). For the reasons that follow, the motion is granted in part and denied in part.

**BACKGROUND**

The following relevant facts — drawn from the Fourth Amended Complaint, documents it incorporates, documents which are relied on so heavily that they are integral to the complaint, and matters of which the Court may take judicial notice — are assumed to be true for purposes of this motion. *See, e.g.*, *Kleinman v. Elan Corp.*, 706 F.3d 145, 147, 152 (2d Cir. 2013); *Chambers v. Time Warner Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

Dr. Henderson is a 64-year-old African-American woman who suffers from multiple sclerosis. FAC ¶ 7. She is a physician who specializes in Maternal-Fetal Medicine, a subspecialty of Obstetrics and Gynecology. *Id.* ¶ 15. From December 2012 until June 2018, she worked at Lincoln Hospital — although, throughout that period, she was technically an employee of PAGNY, a private company that contracts to supply physicians to Lincoln Hospital. *Id.* ¶ 10, 22, 150. Significantly, pursuant to a letter agreement with PAGNY, Dr. Henderson's employment was conditioned on obtaining clinical privileges at Lincoln Hospital. ECF No. 45-1, at 2. PAGNY did not award such privileges; Dr. Henderson could obtain them only from Lincoln Hospital itself. FAC ¶¶ 139-40. Having done so, Dr. Henderson began work at Lincoln Hospital in late 2012, and quickly realized that she would be required to work longer hours than first anticipated. *Id.* ¶ 23. She therefore entered into a "side agreement" with the then-chair of the Obstetrics and Gynecology department to receive overtime compensation for every hour she worked in excess of forty hours per week. *Id.* ¶ 24. At some point in 2015, Dr. Carmen Sultana — a named Defendant here — became the department chair, and at some point in 2016, Dr. Sultana began to increase the department's focus on Maternal-Fetal Medicine. *Id.* ¶¶ 27-29. In pursuit of that goal, Dr. Sultana assigned Dr. Henderson additional duties. *Id.* ¶¶ 30-38. Moreover, Dr. Sultana instructed Dr. Henderson not to list more than forty hours on her

timesheets; when Dr. Henderson submitted timesheets reflecting more than forty hours of work, Dr. Sultana would refuse to approve them until Dr. Henderson edited them to show fewer than forty hours. *Id.* ¶ 44. In one instance, Dr. Sultana even used whiteout to alter Dr. Henderson's timesheets to reflect fewer than forty hours of work. *Id.* ¶ 45. Dr. Sultana thus stopped paying Dr. Henderson overtime, but continued to require that she work as hard as before. *Id.* ¶ 41.

Dr. Henderson believed that she was being singled out for a heavier workload because of her race, age, and disability. *Id.* ¶ 46. She raised concerns about her heavy workload in meetings with her supervisors throughout late 2016, but was rebuffed by Dr. Sultana, who told her that she "should finish her work in 40 hours just like everybody else." *Id.* ¶ 53; *see id.* ¶¶ 50-55. In the spring of 2017, Dr. Henderson raised complaints about alleged discriminatory treatment with HHC and PAGNY through a representative. *Id.* ¶ 61. On September 17, 2017, Dr. Henderson's counsel sent an email to representatives of HHC and PAGNY stating that Dr. Henderson had suffered "disparate treatment on account of her age, race, and disability," and informed them that Dr. Henderson was planning legal action. *Id.* ¶ 62. Beginning around the time of her first complaints, and allegedly in response to those complaints and communications from Dr. Henderson's counsel, Dr. Henderson's supervisors, including Dr. Sultana and Lincoln Hospital's Chief Medical Officer, Dr. Anita Soni, began to subject her to additional negative treatment. That treatment included negative performance reviews, an accusation that her conduct had forced the hospital to settle a malpractice lawsuit for $900,000, and accusations spread within the department that Dr. Henderson was failing to meet her work responsibilities. *Id.* ¶¶ 66-89. Eventually, Dr. Sultana and Dr. Soni hired a new Maternal-Fetal Medicine specialist, depriving Dr. Henderson of her role as the "sole head of her department." *Id.* ¶ 94; *see id.* ¶¶ 90-100.

3

In August 2017, Dr. Sultana and Dr. Soni initiated a review process within the hospital seeking a finding that Dr. Henderson's performance in connection with two childbirths had been deficient, but the Clinical Review Committee appointed to review the cases sided with Dr. Henderson. *Id.* ¶¶ 101-18, 133. Thereafter, Dr. Sultana and Dr. Soni conducted a similar review of their own accord, reached negative findings, and decided that Dr. Henderson should be demoted and stripped of the title of "Director" of Maternal-Fetal Medicine. *Id.* ¶¶ 119-29. Dr. Sultana and Dr. Soni also expressed their views about Dr. Henderson's performance to the Chief Medical Officer of HHC. *Id.* ¶¶ 130-137. Finally, when it came time for Dr. Henderson to apply to Lincoln Hospital for renewal of her hospital privileges, the MEC recommended against renewal, a recommendation that HHC accepted. *Id.* ¶¶ 141-49. After HHC declined to renew Dr. Henderson's privileges at Lincoln Hospital, PAGNY terminated her employment. *Id.* ¶ 150.

Dr. Henderson first brought this action on April 19, 2018, after Dr. Sultana and Dr. Soni had spoken to the Chief Medical Officer of HHC, but before HHC had declined to renew her hospital privileges and PAGNY had terminated her. *See* ECF No. 1. Following her termination, Dr. Henderson amended her complaint. *See* ECF No. 26. When Defendants moved to dismiss that complaint in part, and this Court informed Dr. Henderson that she would have one final chance to amend her complaint to address any arguments made in the motion, *see* ECF No. 38, Dr. Henderson amended her complaint once again, *see* ECF No. 39. After Defendants renewed their motion to dismiss, *see* ECF No. 40, Dr. Henderson obtained Defendants' consent to file the operative Fourth Amended Complaint, in which she added a handful of new factual allegations and six claims that she had administratively exhausted. FAC ¶¶ 169-74, 244-67; *see* ECF No.

51.[1] As noted above, the Fourth Amended Complaint asserts twenty-three causes of action arising under 42 U.S.C. §§ 1981 and 1983, the NYSHRL and NYCHRL, the New York State Constitution, and New York common law. *Id.*

## LEGAL STANDARDS

In evaluating Defendants' motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all facts set forth in the Fourth Amended Complaint as true and draw all reasonable inferences in Dr. Henderson's favor. *See, e.g.*, *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam). A claim will survive a Rule 12(b)(6) motion, however, only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). A plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully," *id.*, and cannot rely on mere "labels and conclusions" to support a claim, *Twombly*, 550 U.S. at 555. If the plaintiff's pleadings "have not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570. Where a plaintiff brings claims of employment discrimination, however, "[t]he facts required by *Iqbal* to be alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination. They need only give plausible support to a minimal inference of discriminatory

---

[1] Dr. Henderson filed the Fourth Amended Complaint after Defendants' motion to dismiss the Third Amended Complaint had been fully briefed. The parties proposed, and the Court adopted, a schedule for supplemental briefing that permitted the parties to address any new issues raised by the amendment, while otherwise treating the earlier briefing as though it applied to the now-operative Fourth Amended Complaint. ECF No. 53.

5

motivation." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015); *see Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86-87 (2d Cir. 2015).

## DISCUSSION

In this motion, Defendants do not challenge Dr. Henderson's retaliation claims or her breach-of-contract claim. Instead, they seek dismissal of her claims against the MEC, her discrimination claims, her procedural due process claims, and her claim for breach of the implied covenant of good faith and fair dealing. The Court will address each of those arguments in turn.

**A.     The Claims Against the MEC**

The Court begins with Defendants' argument that Dr. Henderson's claims against the MEC should be dismissed because the MEC is not a suable entity under New York law. Defs.' Mem. 9-10. Notably, Dr. Henderson appears to accept Defendants' major premise: that HHC's subdivisions and subordinate entities are not suable under New York law. ECF No. 44 ("Pl.' Opp'n"), at 15-16. Instead, she disputes only the minor premise: that the MEC *is* such an entity. *See id.* The MEC, Dr. Henderson argues, is an independent "unincorporated association" that may be sued in the name of its president or treasurer. *Compare* Defs.' Mem. 9-10, *with* Pl.'s Opp'n 15-18 & n.5; *see also* N.Y. C.P.L.R. § 1025; N.Y. Gen. Ass'ns Law § 13. More specifically, the Fourth Amended Complaint alleges that the MEC is such an "unincorporated association" to which the Lincoln Hospital Medical Staff's Bylaws assign certain important functions, but which remains "quasi-independent" from HHC. FAC ¶ 14; Pl.'s Opp'n 16; *see* ECF No. 45-3 ("Bylaws") § 7.1(B)(1).

Upon review of those Bylaws (which the Court may consider on this motion because they are "integral" to the Fourth Amended Complaint, *see Chambers*, 282 F.3d at 153), the Court concludes that the MEC is not a suable entity under New York law. It is true, as Dr. Henderson

suggests, that the Bylaws apply to a "self-governing body," namely the Medical and Dental Staff of Lincoln Hospital. Bylaws § 1.1; *accord* FAC ¶ 14. But that same "organized . . . Medical Staff" — the "[f]ormal organization" of "Licensed Independent Practitioners" responsible for the Bylaws — exercises only the "responsibility and authority[] delegated by" what the Bylaws refer to as "the Governing Body," which itself "has ultimate authority and responsibility for establishing policy, managing quality care, and providing organizational management and planning." *See* Bylaws § 1.4 (definitions of "Medical Staff," "Medical Staff, organized," "Medical Executive Committee," and "Governing Body"). That "Governing Body" is defined, in turn, as the Board of Directors of NYC Health + Hospitals, also known as HHC. *Id.* (definition of "Governing Body"); FAC ¶ 9 & n.1. Thus, the MEC — a standing committee created by the Bylaws to "perform[] the Medical Staff executive functions," Bylaws § 7.1 — exercises authority conferred by the Medical Staff, the authority of which derives, in turn, from HHC. And, while HHC clearly has the capacity to sue and be sued under New York law, *see* N.Y. Unconsol. Law § 7385 (McKinney), there is no dispute that its subordinate entities do not. Accordingly, Dr. Henderson's claims against the MEC itself must be and are dismissed.

That said, dismissal of Dr. Henderson's claims against the MEC is ultimately of little import. Because the MEC derives its authority from HHC, and HHC is a named Defendant in this case, Dr. Henderson may obtain all the relief she seeks through a judgment against HHC alone. *Cf., e.g.*, *Smith v. Westchester Cty.*, 769 F. Supp. 2d 448, 454 n.1 (S.D.N.Y. 2011) (dismissing a claim against a municipal agency and noting that the plaintiff would not be prejudiced because the municipality itself was named as a defendant "and would be responsible for any resulting judgment" secured by the plaintiff).

B.  **The Discrimination Claims**

More substantially, Defendants seek dismissal of all discrimination-based claims, brought under Section 1981, the ADEA, the ADA, Title VII, the NYSHRL, and the NYCHRL. Claims under these provisions are subject to the three-step burden-shifting analysis articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See, e.g.*, *Nieblas-Love v. N.Y.C. Hous. Auth.*, 165 F. Supp. 3d 51, 65-66 (S.D.N.Y. 2016) (Section 1981 claims); *Watson v. Geithner*, No. 11-CV-9527 (AJN), 2013 WL 5441748, at *4 (S.D.N.Y. Sept. 27, 2013) (Title VII, ADEA, ADA, NYSHRL, and NYCHRL claims).[2] At the motion-to-dismiss stage, however, only the first step — the plaintiff's burden to allege a *prima facie* case of discrimination — is at issue. *See Littlejohn*, 795 F.3d at 311; *McDonnell Douglas*, 411 U.S. at 802. To establish a *prima facie* case under all provisions except the NYCHRL, a plaintiff must show that: (1) she was a member of a protected class; (2) she was competent to perform the job in question, or was performing the job duties satisfactorily; (3) she suffered a materially adverse employment action; and (4) the action occurred under circumstances that give rise to an inference of discrimination. *See, e.g.*, *Jeune*, 2014 WL 83851, at *4. The showing required for NYCHRL claims differs slightly, as the adverse action need not be "material"; instead, a plaintiff need only demonstrate differential treatment that is "'more than trivial, insubstantial, or petty.'" *Gorman v. Covidien, LLC*, 146 F. Supp. 3d 509, 530 (S.D.N.Y. 2015) (quoting *Williams v. Regus Mgmt. Grp., LLC*, 836 F. Supp. 2d 159, 173 (S.D.N.Y. 2011)). A NYCHRL plaintiff, however,

---

[2]  Strictly speaking, it is "unclear whether, and to what extent, the *McDonnell Douglas* burden-shifting analysis has been modified for NYCHRL claims." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 n.8 (2d Cir. 2013). Nevertheless, courts in this Circuit "typically . . . apply the liberal standards of the NYCHRL to the basic *McDonnell Douglas* framework." *Jeune v. City of New York*, No. 11-CV-7424 (JMF), 2014 WL 83851, at *4 (S.D.N.Y. Jan. 9, 2014) (alterations and internal quotation marks omitted).

8

must still adduce evidence supporting an inference of discrimination. *Williams*, 836 F. Supp. 2d at 177. Indeed, to survive a motion to dismiss under all of the provisions at issue in this case, the facts alleged must provide "at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn*, 795 F.3d at 311.

Here, whether Dr. Henderson alleges enough facts to provide "at least minimal support for the proposition" that Defendants' actions were motivated by discrimination turns on whether she plausibly alleges that she was treated less favorably than similarly situated employees who did not share her race, age, or disability. *Compare* Defs.' Mem. 10-13, 19-25, *with* Pl.'s Opp'n 10-15, *with* ECF No. 49 ("Defs.' Reply"), at 1-4, *with* ECF No. 55 ("Pl.'s Suppl. Mem."), at 3-4; *see* FAC ¶¶ 2, 49, 83. "A plaintiff may support an inference of . . . discrimination by demonstrating that similarly situated employees [outside of her protected class] were treated more favorably," but "[i]n order to make such a showing, the plaintiff must compare herself to employees who *are similarly situated in all material respects*." *Norville v. Staten Island Univ. Hosp.,* 196 F.3d 89, 95 (2d Cir. 1999) (internal quotation marks omitted) (emphasis added). "Showing similarity in all material respects requires that the plaintiff and the comparator were (1) subject to the same performance evaluation and discipline standards and (2) engaged in comparable conduct." *Rajcoomar v. Bd. of Educ., Newburgh Enlarged City Sch. Dist.*, No. 16-CV-1682 (VB), 2019 WL 719513, at *10 (S.D.N.Y. Feb. 20, 2019) (internal quotation marks omitted). Ultimately, that is "a question of fact for the jury." *Id.* (internal quotation marks omitted). "At the motion to dismiss stage," however, "a court still must determine whether, based on a plaintiff's allegations in the complaint, it is plausible that a jury could ultimately determine that the comparators are similarly situated. Thus, well-pled facts showing that the plaintiff has been treated differently from others similarly situated remains an essential

component of such a claim and conclusory allegations of selective treatment are insufficient." *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 698 (S.D.N.Y. 2011) (alterations and internal quotation marks omitted); *accord Dooley v. Jetblue Airways Corp.*, No. 14-CV-4432 JMF, 2015 WL 1514955, at *3 (S.D.N.Y. Apr. 1, 2015), *aff'd in relevant part*, 636 F. App'x 16, 20 (2d Cir. 2015).

Applying those standards here, the Court concludes that Dr. Henderson's discrimination claims fail. Put simply, she fails to identify *any* similarly situated comparator, alleging only "upon information and belief" that the "other" physicians in the Obstetrics and Gynecology Department — "none of whom were African-American or disabled, and most of whom were younger" — were treated differently. FAC ¶ 2; *see also id.* ¶¶ 49, 83. Without more, that is insufficient. *See, e.g.*, *Lopez v. Advantage Plumbing & Mech. Corp*, No. 15-CV-4507 (AJN), 2016 WL 1268274, at *4 (S.D.N.Y. Mar. 31, 2016) (noting that "[c]ourts in this district have . . . permitted" allegations "upon information and belief" as to comparators "if plaintiffs provide sufficient identifying details about similarly situated individuals" (internal quotation marks omitted)); *cf. Barrett v. Forest Laboratories, Inc.*, 39 F. Supp. 3d 407, 432 (S.D.N.Y. 2014) (permitting plaintiffs to allege that they were paid less than their male coworkers only "upon information on belief" because each plaintiff also "(1) state[d] the amount of her base salary, (2) identifie[d] at least one male comparator, and (3) allege[d] that the comparator received a higher base salary"). It is particularly insufficient here, as the Fourth Amended Complaint itself alleges ways in which Dr. Henderson was *not* similarly situated to the other physicians in her department. *See* FAC ¶¶ 23, 25-26 (alleging that Dr. Henderson was the only Maternal-Fetal Medicine specialist in the Obstetrics and Gynecology Department and, as such, had different work and hours).

Here, as in *Lopez*, Dr. Henderson's "failure to identify any particular 'comparators,'" combined with her failure to allege any facts to support her information-and-belief allegations that they were not subjected to the same negative treatment, "precludes [her] from pleading 'upon information and belief'" that she was treated less favorably than other similarly situated employees who nonetheless did not share Dr. Henderson's race, age, or disability. *Lopez*, 2016 WL 1268274, at *4. Without those allegations, the Fourth Amended Complaint "fails to describe who these people are, what their responsibilities were, how their workplace conduct compared to [Dr. Henderson's], or how they were treated." *Henry v. N.Y.C. Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 408 (S.D.N.Y. 2014). That, in turn, means that Dr. Henderson fails to provide even the "minimal support" required "for the proposition that the employer was motivated by discriminatory intent," as required to complete a *prima facie* case of discrimination. *Littlejohn*, 795 F.3d at 311; *see, e.g.*, *Warburton v. John Jay Coll. of Criminal Justice of the City Univ. of N.Y.*, No. 14-CV-9170 (JPO), 2016 WL 3748485, at *4 (S.D.N.Y. July 7, 2016) (explaining that, in the absence of at least some "supporting factual allegations" detailing a plaintiff's comparators and how they were treated differently, a court cannot draw "even the minimal inference of discriminatory intent needed to survive a motion to dismiss," and collecting cases), *aff'd sub nom. Warburton v. Hoffman*, 677 Fed. App'x 9 (2d Cir. 2017); *see also Dooley*, 2015 WL 1514955, at *3 (dismissing discrimination claims where the complaint identified two comparators, but "provide[d] no information about their tenure, rank, or performance evaluations within the company, and, perhaps most importantly, [gave] no indication that, like Plaintiff, they had history of prior questionable absences from work"). All of Dr. Henderson's discrimination claims — whether predicated on age, race, or disability, and whether arising under federal, state, or city law — must therefore be dismissed.

11

## C. The Procedural Due Process Claims

Next, Defendants argue that Dr. Henderson's procedural due process claims must be dismissed because she fails to allege the deprivation of any protected property or liberty right. "In the employment context, a property interest arises only where the state is barred, whether by statute or contract, from terminating (or not renewing) the employment relationship *without cause*." *S & D Maint. Co. v. Goldin*, 844 F.2d 962, 967 (2d Cir. 1988). Under New York law, employment relationships are presumed to be at-will, "terminable at any time by either party," *Baron v. Port Auth. of N.Y. & N.J.*, 271 F.3d 81, 85 (2d Cir. 2001) (quoting *Sabetay v. Sterling Drug, Inc.*, 506 N.E.2d 919, 920 (N.Y. 1987)), and remain so absent "an express limitation in the individual contract of employment curtailing an employer's right to terminate at will," *Baron*, 271 F.3d at 85 (internal quotation marks omitted). Even where a plaintiff seeks to rely on a separate writing — such as a handbook or, as in this case, the Medical Staff's Bylaws — "specifying the employer's practices with respect to the employment relationship, including the procedures or grounds for termination" as part of the employment contract, a court cannot find for-cause protection without proof "that . . . an express written policy limiting the employer's right of discharge exists." *Id.* In either event, "[t]he New York Court of Appeals has admonished that this is a difficult pleading burden, and that routinely issued employee manuals, handbooks and policy statements should not lightly be converted into binding employment agreements." *Id.* (citation, emphasis, and internal quotation marks omitted).

In light of those principles, the Court concludes that Dr. Henderson fails to allege a protected property right. Dr. Henderson's argument to the contrary relies on a combination of her employment contract and PAGNY and HHC's Bylaws. *See* Pl.'s Opp'n 21 ("Taking the Letter Agreement and the Bylaws together, Dr. Henderson could not be terminated unless she

failed to obtain hospital privileges, which could not be denied except with just cause."). But putting aside whether it is proper to consider two documents together in that manner, the argument fails because the documents, considered separately or together, do not contain an "express limitation . . . curtailing" either PAGNY or HHC's right to "terminate" the relevant benefits at will. As Dr. Henderson points out, the Bylaws do specify several factors that the relevant committees and officials must consider in making reappointment recommendations to HHC. *See* FAC ¶ 104; Bylaws § 2.7; Pl.'s Opp'n 20. But it is well established that even "[t]he enumeration of certain grounds for termination" (or, in this case, denial of reappointment) "does not constitute a promise" to decline to reappoint "an employee *solely* for [those] reasons." *Estronza v. RJF Sec. & Investigations*, No. 12-CV-1444 (NGG), 2014 WL 5877942, at *7 (E.D.N.Y. Nov. 12, 2014) (emphasis added) (collecting cases). Making matters clearer, the Bylaws *do* expressly curtail HHC's right to deny clinical privileges on the basis of age, sex, race, creed, color, religion, sexual orientation, nationality, or any disability "unrelated to the ability to fulfill patient care and required staff obligations." Bylaws § 2.1, at 23-24. But that language merely illustrates that the drafters of the Bylaws knew how to impose an express limitation on HHC's right of termination when they wanted to — and underscores the absence of any "for cause" provision. Thus, even assuming that the Bylaws could be construed to create contractual rights, they do not contain an "an express limitation in the individual contract of employment curtailing an employer's right to terminate at will," and therefore do not suffice to establish a constitutionally protected property right. *Baron*, 271 F.3d at 85 (internal quotation marks omitted).

That is not the end of the matter, however, because even where, as here, an employee lacks a constitutionally protected property right, she "can invoke the protections of the Due

13

Process Clause" by showing that she "has suffered a loss of reputation coupled with the deprivation of a more tangible interest, such as government employment." *Segal v. City of New York*, 459 F.3d 207, 212 (2d Cir. 2006) (internal quotation marks omitted). To state such a claim — known as a "stigma-plus" claim — a plaintiff must allege the deprivation of government employment as well as the following three elements:

> *First*, the plaintiff must show that the government made stigmatizing statements about her — statements that call into question the plaintiff's good name, reputation, honor, or integrity . . . [or] statements that denigrate the employee's competence as a professional and impugn the employee's professional reputation in such a fashion as to effectively put a significant roadblock in that employee's continued ability to practice his or her profession . . . . *Second,* a plaintiff must prove these stigmatizing statements were made public. *Third,* the plaintiff must show that the stigmatizing statements were made concurrently with, or in close temporal relationship to, the plaintiff's dismissal from government employment."

*Id.* at 212-13 (citations, alterations, and internal quotation marks omitted).

Although the question is a close one, the Court concludes that it must deny Defendants' motion to dismiss Dr. Henderson's "stigma-plus" claim. With respect to the first element, the Fourth Amended Complaint alleges that HHC's termination notice cited "concerns as to whether [Dr. Henderson] had been forthcoming and complete regarding the circumstances surrounding" her departure from a previous job. FAC ¶ 146.[3] That amounts to a "charge[] that" Dr. Henderson "acted dishonestly," which implicates a reputational interest that the Due Process Clause protects. *Donato v. Plainview-Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 630 (2d Cir. 1996). And with respect to the second and third elements, the Fourth Amended Complaint alleges that Defendants reported "[t]he circumstances surrounding [her] termination" to the New

---

[3] The Fourth Amended Complaint also alleges that the termination notice cited Dr. Henderson's "poor performance over a number of years and failure to follow appropriate guidelines despite several attempts . . . to achieve remediation." FAC ¶ 145. That statement, however, is no more than a "vague statement[] of unspecified 'incompetence,'" and is therefore insufficient to support a "stigma-plus" claim. *Donato*, 96 F.3d at 631.

14

York State Department of Health's Office of Professional Medical Conduct ("OPMC"), which then opened an investigation. FAC ¶¶ 169-71.[4] Defendants argue that because "a referral to OPMC is mandated by New York Public Health Law Section 2803-e and is deemed confidential," the referral here is protected by a privilege akin to the qualified privilege that operates in defamation law to protect statements made in the course of certain public or private duties. ECF No. 54 ("Defs.' Suppl. Mem."), at 11-12. The Second Circuit has held, however, that a legally mandated reporting requirement does not necessarily create a defense to a "stigma-plus" claim. *Donato*, 96 F.3d at 632-33 (holding that a school district's statement of reasons for terminating an employee "implicate[d] the protections of the Fourteenth Amendment" even though New York law required the school district to issue it). Discovery may well reveal that the precise statements made to the OPMC were not "so stigmatizing as to foreclose [Dr. Henderson's] freedom to seek other employment." *Id.* at 632. It may also reveal that Dr. Henderson's alleged injuries would be redressed by an "adequate, reasonably prompt, post-termination name-clearing hearing," *Segal*, 459 F.3d at 214. At this stage, however, Dr. Henderson's "stigma-plus" allegations are enough to survive Defendants' motion to dismiss.

---

[4] Dr. Henderson contends that the second and third elements required to state a stigma-plus claim are also satisfied because Defendants placed the stigmatizing charges in her personnel file. Significantly, however, the Fourth Amended Complaint does not allege that those charges "are likely to be disclosed to prospective employers." *Donato*, 96 F.3d at 631 (internal quotation marks omitted); *see Ingber v. N.Y.C. Dep't of Educ.*, No. 14-CV-3942 (JMF), 2014 WL 6888777, at *3 n.3 (S.D.N.Y. Dec. 8, 2014) (holding that merely placing a "red flag" next to the plaintiffs' names in an internal personnel file did not suffice for a "stigma-plus" claim in the absence of a plausible allegation "that the statements are likely to be made public"). At most, the Fourth Amended Complaint alleges that Dr. Henderson would have to disclose the fact of her termination to prospective employers and malpractice insurance carriers. *See* FAC ¶¶ 156-58. By itself, however, that does not qualify as a cognizable "stigma" for purposes of the Due Process Clause. *See Donato*, 96 F.3d at 630 ("[A]s understood by the Fourteenth Amendment, a decision not to reemploy, standing alone, does not deprive an employee of liberty.").

**D.      The Claim for Breach of the Covenant of Good Faith and Fair Dealing**

Finally, Defendants argue that Dr. Henderson's claim for breach of the implied covenant of good faith and fair dealing should be dismissed as "duplicative of her breach of contract claim." Defs.' Mem. 25.  The Court agrees.  "An implied-covenant claim can survive a motion to dismiss only if it is based on allegations different than those underlying the accompanying breach of contract claim and the relief sought is not intrinsically tied to the damages allegedly resulting from the breach of contract."  *Grant & Eisenhofer, P.A. v. Bernstein Liebhard LLP*, No. 14-CV-9839 (JMF), 2015 WL 1809001, at *4 (S.D.N.Y. Apr. 20, 2015) (internal quotation marks omitted).  That is not the case here.  Dr. Henderson's contract claim is based on the allegation that Defendants (through Dr. Sultana's predecessor) agreed to pay her overtime for any work exceeding forty hours per week.  *See* FAC ¶ 237.  Meanwhile, her implied-covenant claim is based on the allegation that Defendants refused to approve timesheets that reflected more than forty hours of work in a week and, in one instance, affirmatively forged a timesheet to reflect fewer than forty hours of work.  FAC ¶¶ 45, 242.  If a jury were to agree with both allegations, however, Dr. Henderson would be entitled to recover for any week that she worked more than forty hours; the allegation that Defendants forced Dr. Henderson to submit inaccurate time sheets adds nothing (except presumably to make it more difficult, as an evidentiary matter, to prove a breach for the relevant weeks).  Thus, her implied-covenant claim "is merely a restatement of the breach-of-contract claim and so fails as a matter of law."  *Grant & Eisenhofer, P.A.*, 2015 WL 1809001, at *4 (citing cases).

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Fourth Amended Complaint in part is GRANTED in part and DENIED in part.  Specifically, all of Dr. Henderson's claims

against the MEC, whether through its Chairman or otherwise, are dismissed, as are her discrimination claims (the First, Fourth, Sixth, Eighth, Tenth, Twelfth, Fourteenth, Eighteenth, Twentieth, and Twenty-Second Causes of Action) and her implied-covenant claim (the Seventeenth Cause of Action). Defendants' motion to dismiss is otherwise denied.

Further, the Court declines to grant Dr. Henderson leave to amend *sua sponte*. First, the problems with Dr. Henderson's implied-covenant claim are substantive, and she has neither sought leave to amend nor suggested that she possesses any additional facts that could cure the defects in that claim. Amendment with respect to that claim would therefore be futile. *See, e.g.*, *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *Fischman v. Mitsubishi Chem. Holdings Am., Inc.*, No. 18-CV-8188 (JMF), 2019 WL 3034866, at *7 (S.D.N.Y. July 11, 2019) (declining to grant leave to amend as to certain claims in the absence of any suggestion that additional facts could remedy defects in the plaintiff's pleading). As for Dr. Henderson's discrimination claims, Dr. Henderson similarly does not seek leave to amend or suggest that she possesses more facts to plead. Furthermore, Dr. Henderson was on notice of Defendants' objection to Dr. Henderson's information-and-belief pleading by the time she filed her Fourth Amended Complaint. *See* Defs.' Mem. 13, 21. In light of those circumstances, the Court will not *sua sponte* grant leave to amend for a fourth time. *See, e.g.*, *Overby v. Fabian*, No. 17-CV-3377 (CS), 2018 WL 3364392, at *14 (S.D.N.Y. July 10, 2018) ("Plaintiff's failure to fix deficiencies in his previous pleading, after being provided ample notice of them, is alone sufficient ground to deny leave to amend *sua sponte*."); *accord Weir v. Cenlar FSB*, No. 16-CV-8650 (CS), 2018 WL 3443173, at *10, *16 (S.D.N.Y. July 17, 2018) (*sua sponte* denying leave to amend an FDCPA claim that failed, in part, because of the plaintiff's inability to support allegations made "upon information and belief" with additional facts); *see also Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*,

898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first." (alteration and internal quotation marks omitted)).

Defendants shall file their answer to the remaining claims in the Fourth Amended Complaint no later than **August 26, 2019**. In addition, the initial pretrial conference is reinstated and ADJOURNED to **September 12, 2019** at **2:45 p.m.** in Courtroom 1105 of the Thurgood Marshall United States Courthouse, 40 Centre Street, New York, New York. That conference will continue to be governed by the Court's Order of April 24, 2018, and the parties should prepare accordingly, including by submitting a joint letter addressing certain topics and a proposed case management plan no later than the Thursday prior to that conference *See* ECF No. 7, at 2-3.

The Clerk of Court is directed to terminate the Medical Executive Committee of Lincoln Medical and Mental Health Center as a Defendant and to terminate ECF Nos. 40 and 54.

SO ORDERED.

Dated: August 12, 2019
New York, New York

_____
JESSE M. FURMAN
United States District Judge